UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

In re ALMOST FAMILY INC.                   Civil Action No. 3:18-CV-00040-RGJ
SECURITIES LITIGATION.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants', Almost Family, Inc. ("Almost Family" or the "Company"), LHC Group, Inc. ("LHC") and Defendants' Henry M. Altman, Jr., Steven B. Bing, Jonathan D. Goldberg, Clifford S. Holtz, Donald G. McClinton, W. Earl Reed, III, Tyree G. Wilburn, and William B. Yarmuth (the "Individual Defendants" and collectively with Almost Family and LHC, the "Defendants"), Motion to Dismiss [DE 31] and Motion to Strike the Affidavit of Plaintiff's Purported Expert [DE 32]. Responses [DE 35, 36], replies [DE 37, 38], and supplemental authority [DE 40, 41, 42] were filed. These matters are ripe. For the reasons below, the Motion to Dismiss [DE 31] and Motion to Strike the Affidavit of Plaintiff's Purported Expert [DE 32] are **GRANTED**. Finally, because the Court is granting Defendants' Motion to Dismiss, it need not decide Plaintiffs' Motion for Substitution of Party for Deceased Defendant Steven B. Bing [DE 43]. Plaintiffs' Motion for Substitution of Party for Deceased Defendant Steven B. Bing [DE 43] is **DENIED as MOOT**.

### I.     BACKGROUND

Plaintiffs filed an Amended Complaint ("FAC") alleging violations of Section 14(a), 20(a), and breach of fiduciary duties. [DE 26]. Defendants now move to dismiss the FAC. [DE 31]. This matter stems from an agreement and plan of merger ("Merger Agreement") between Almost Family and LHC. [DE 26 at 320, ¶¶ 1–2]. The Merger Agreement proposed a $2.4 billion merger, in which Almost Family shareholders would receive 0.9150 shares of LHC stock for each existing

1

share of Almost Family stock. [DE 31-1 at 414]. Plaintiffs allege that the merger consideration was inadequate given Almost Family's performance and prospects for further growth. [DE 26 at 330, ¶36]. Plaintiffs allege that Defendants' proxy statement ("the Proxy") violated Section 14(a) of the Securities Act. [*Id.* at 320, ¶¶3–4]. Plaintiffs assert that the financials in the Proxy were materially misleading and the Proxy was otherwise misleading because it omitted necessary financial information that would allow shareholders to understand the financial figures and fairness opinion provided with the Proxy. [*Id.* at 320, ¶4; 322, ¶¶8–9]. Plaintiffs also allege control person liability for the Individual Defendants. [*Id.* at 360–62, ¶¶145–52]. Finally, Plaintiffs assert that the Individual Defendants breached their duties of loyalty and good faith by allowing dissemination of the allegedly misleading Proxy. [*Id.* at 362, ¶¶153–57].

A. <u>The Proxy</u>

Almost Family distributed the Proxy to shareholders. [DE 26 at 320, ¶3]. The Proxy includes two fairness opinions, one prepared by Jefferies LLC on behalf of LHC and one prepared by Guggenheim Securities LLC ("Guggenheim") on behalf of Almost Family. [DE 31-2, the Proxy, at Annex C, D]. Both fairness opinions recommend the merger. [*Id.*]. The Proxy also includes a letter from the Board of Directors of both LHC and Almost Family asserting unanimous approval of the Merger Agreement and request for the shareholders of both companies to approve the various agreements and carry out the merger. [*Id.* at 442–48]. The Proxy, under the heading "Certain Almost Family Unaudited Prospective Financial Information," also includes financial projections for the years 2017 through 2022. [*Id.* at 553–54]. The Proxy discloses that the financial projections "were not prepared with a view toward public disclosure or soliciting proxies, nor were they prepared with a view toward compliance with GAAP." [*Id.* at 553]. The Proxy includes the below table and projections.

*Almost Family financial projections*

| (in millions of US dollars) | 2017E | 2018E | 2019E | 2020E | 2021E | 2022E |
|---|---|---|---|---|---|---|
| Net Revenue | $803.9 | $850.2 | $894.1 | $940.3 | $989.0 | $1,040.2 |
| Gross Profit | $385.5 | $410.8 | $430.4 | $450.9 | $472.5 | $495.0 |
| Adjusted EBITDA-NCI | $65.4 | $87.8 | $94.7 | $102.2 | $109.7 | $117.7 |
| Adjusted EBITDA-NCI+SBC | $68.7 | $90.9 | $97.9 | $105.5 | $113.1 | $121.2 |
| Net Income | $20.7 | $45.1 | $50.2 | $55.1 | $59.6 | $64.4 |

Fiscal Year Ending December 31,

Along with the financial projections, the Proxy includes several paragraphs disclaiming the accuracy of the projections and explaining their limited use. For example, the Proxy states that "[i]n connection with the Almost Family board of directors' consideration of the proposed merger, Almost Family management prepared certain non-public unaudited prospective financial information regarding Almost Family's anticipated future performance on a stand-alone basis for fiscal years 2017 through 2022[.]" [*Id*. at 553]. It informs shareholders that "financial projections were provided to, and reviewed and approved by, the Almost Family board of directors and provided to (i) Almost Family's financial advisor for its use and reliance in connection with its financial analyses and opinion" and were not "prepared with a view toward compliance with GAAP[.]" [*Id*.]. The Proxy disclaims that "neither Almost Family nor LHC views the Almost Family financial projections as material because of the inherent risks and uncertainties associated with such long-term projections." [*Id*. at 554]. It further states that:

> [t]he Almost Family financial projections are summarized in this joint proxy statement/prospectus solely to give stockholders access to information that was made available to Almost Family's board of directors and financial advisor and to LHC and its financial advisor in connection with their respective evaluations of the merger, and are not included in this joint proxy statement/prospectus in order to influence any Almost Family stockholder or LHC stockholder to make any investment or voting decision with respect to the merger.

[*Id*. at 553].

The Proxy also includes a Summary of Financial Analyses, a 14 page "summary of the principal financial analyses performed by Guggenheim Securities and presented to Almost Family's board of directors in connection with Guggenheim Securities' rendering of its opinion." [*Id.* at 540–50]. The full fairness opinion is included, as well. [*Id.* at Annex D]. That said, the Proxy does not include all the financial data and figures which Guggenheim relied on in preparing the fairness opinion.

B. Prior Litigation

Before the closure of the merger, several Plaintiffs filed separate actions alleging substantially the same claims as those in the FAC. [DE 21-2 at 161–63]. Plaintiffs also filed for a preliminary injunction to stop the merger based on substantially the same arguments as the FAC. [*Id.*]. This Court denied the motion for preliminary injunction because it found that Plaintiffs did not demonstrate a strong likelihood of success on the merits. *Stein v. Almost Family, Inc.*, No. 3:18-CV-129-TBR, 2018 U.S. Dist. LEXIS 46910 (W.D. Ky. Mar. 22, 2018). The Merger closed. [DE 31-1 at 416]. This Court consolidated the several cases into the instant class action and allowed Plaintiffs to file an amended complaint. [DE 25].

## II. STANDARD

In considering a motion to dismiss, the Court accepts as true all factual allegations set forth in the complaint and makes all reasonable inferences in favor of the non-moving party. *Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint will be dismissed "if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

Claims alleging that misleading statements have violated securities laws face a heightened pleading standard under the Private Securities Litigation Reform Act (the "PSLRA"). 15 U.S.C. § 78u-4(b)(1); *see Kugelman v. PVF Capital Corp.*, 972 F. Supp. 2d 993, 999 (N.D. Ohio 2013). Such complaints "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The purpose of this heightened pleading standard is "to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DISCUSSION

Plaintiffs allege that the Proxy violates Section 14(a) of the Securities Act because the financial projections in the Proxy were materially misleading as they were not prepared in accordance with GAAP. [DE 26 at 331–39]. Plaintiffs also assert that the Proxy omits necessary financial information that would allow shareholders to understand the financial figures and fairness opinion provided, thereby, making those financial figures and the fairness opinion materially misleading. [*Id.* at 339–56]. Plaintiffs also allege control person liability for the Individual Defendants, [*id.* at 360–62] and allege that the Individual Defendants breached their duties of loyalty, good faith, and due care by allowing distribution of the allegedly misleading Proxy, [*id.*

5

at 362]. Defendants have moved to dismiss the FAC because it fails to state a claim upon which relief can be granted. [DE 31, 31-1]. Because Plaintiffs' Section 20(a) and breach of fiduciary duty claims depend, at least in part, on whether there was an underlying violation of Section 14(a), the Court will begin its analysis of those claims.

A. Plaintiffs' Section 14(a) Claims

The Securities Exchange Act Section 14(a) grants the SEC power to promulgate rules and regulations for soliciting proxies on any registered security. 15 U.S.C. § 78n(a). It also makes it unlawful to solicit any proxy in contravention of those rules and regulations. *Id.* "The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation," and the section provides a private right of action. *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964). SEC Rule 14a-9 prohibits soliciting a proxy through materially false or misleading statements or omissions. 17 C.F.R. § 240.14a-9. A Section 14(a) claim made pursuant to that rule has four basic elements: (i) the proxy statement contains a material misrepresentation or omission; (ii) defendants were at least negligent;[1] (iii) the misrepresentations or omissions caused plaintiffs' alleged loss; and (iv) the proxy statement was an essential link in the completion of the transaction. *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 868 (S.D. Ohio 2013) (quoting *Lane v. Page*, 727 F. Supp. 2d 1214, 1227–28 (D.N.M. 2010)).

A misrepresentation or omission is material when there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). In other words, the fact at issue must significantly alter

---

[1] The parties dispute whether scienter or negligence is required. The Court addresses the issue below.

the "total mix" of information in the proxy statement. *Id.* The Court should determine whether a statement is misleading objectively from a reasonable stockholder's perspective. *Id.* at 445.

The PSLRA requires Section 14(a) claims to allege loss causation. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 165 (2008) (holding that the PSLRA imposes a loss causation requirement upon any private right of action brought under the Sec. Exchange Act); *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000) (finding loss causation a requisite of a properly plead claim pursuant Section 14(a) claim). Loss causation consists of both economic loss and proximate causation—Plaintiffs must allege both. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). To plead loss causation in a 14(a) claim, Plaintiffs must tie the misleading proxy statements directly to the economic harm suffered by Plaintiffs. *In re Hot Topic Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014 WL 7499375, at *11 (C.D. Cal. May 2, 2014); *Grace*, 228 F.3d at 47–48.

Plaintiffs allege that Defendants violated Section 14(a) through both affirmative misstatements and omissions.

i. <u>The Proxy contains no material misstatements</u>.

First, Plaintiffs allege that Defendants made an affirmative misstatement by including the non-GAAP financials in the Proxy without a corresponding reconciliation in violation of Regulation G. [DE 26 at 338, ¶60]. To this end, Plaintiffs allege that because the financial projections were non-GAAP, Defendants needed to provide GAAP equivalent financial figures in the Proxy in accordance with Regulation G. [*Id.*]. Failure to provide GAAP equivalent figures constitutes an independent violation of the Securities Act. [DE 35 at 756]. Plaintiffs also argue that the Company's statement that it could not provide GAAP equivalents was a false and

7

misleading statement and constituted another material misstatement in the Proxy. [DE 26 at 339, ¶¶64–66].

In response, Defendants assert that the Proxy does not contain a misstatement because Regulation G does not apply to the financial projections on which Plaintiffs base their claim. Defendants cite subsection (d) of Regulation G, which exempts from compliance "a non-GAAP financial measure included in [a] disclosure relating to a proposed business combination . . . if the disclosure is contained in a communication that is subject to . . . § 229.1015 of this chapter." [DE 31-1 at 419–20]. Defendants assert that they included the financial projections to comply with 17 C.F.R. § 229.1015 ("Item 1015"), requiring companies that receive fairness opinions to disclose summaries of those opinions, including the "the bases for and methods of arriving at such findings and recommendations." [*Id.* (quoting 17 C.F.R. § 229.1015)]. Defendants assert that the projections "were not prepared with a view toward public disclosure or soliciting proxies, nor were they prepared with a view towards compliance with GAAP," and were in the Proxy "solely to give stockholders access to information that was made available to Almost Family's board of directors and financial advisor." [DE 31-1 at 415 (quoting 31-2 at 553)]. Thus, they fall within subsection (d) and are exempt from Regulation G.

Defendants also contend that Regulation G does not apply to the financial projections because the disclosure requirement of Regulation G only applies to "***material*** information that includes a non-GAAP financial measure." [DE 31-1 at 420 (emphasis in original)]. The Proxy discloses that the projections were not intended to be material information. [*Id.* at 420–21]. It also warns against their accuracy. [*Id.*]. The projections are thus not material. As a result, they are not subject to Regulation G. Finally, Defendants contend, that even if Regulation G does apply, Defendants were exempt from Regulation G's requirement to provide a GAAP equivalent because

the Company was unable to reasonably predict certain items in the GAAP measures, and thus providing GAAP equivalent constituted "unreasonable efforts."[2] [*Id.* at 421–23].

### 1. Regulation G does not apply.

In support of their interpretation of Regulation G, Defendants cite an SEC Compliance & Disclosure Interpretation (the "C&DI"). [*Id.* at 419]. The C&DI states that non-GAAP financial measures "included in forecasts provided to a financial advisor and used in connection with a business combination transaction" are exempt from the requirement of Regulation G if "the financial measures are included in forecasts provided to the financial advisor for the purpose of rendering an opinion that is materially related to the business combination transaction; and the forecasts are being disclosed in order to comply with Item 1015 of Regulation M-A." C&DI, at Question 101.01, https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm (last updated Apr. 4, 2018). Defendants assert that this C&DI supports their interpretation that Regulation G does not apply to the financial projections.[3]

Plaintiffs argue that C&DIs are "non-binding views of certain SEC staff members" and amount to mere "non-binding blog posts." [DE 35 at 764–65]. Instead, Plaintiffs urge the Court

---

[2] Because the Court finds that the non-GAAP financials fall into subsection (d) exempting them from the requirements of Regulation G, the Court need not reach the questions of whether the projections were material or whether providing GAAP financials constituted "unreasonable efforts."

[3] Plaintiffs argue that the Proxy "dispels any claim that the non-GAAP financial measures were provided to Guggenheim solely for its use under Item 1015 of Regulation M-A" because it stated that "[i]n connection with the Almost Family board of directors' consideration of the proposed merger, Almost Family management prepared certain non-public unaudited prospective financial information regarding Almost Family's anticipated future performance on a stand-alone basis for fiscal years 2017 through 2022." [DE 35 at 764]. That said, the Proxy clearly states that "[t]he Almost Family financial projections are summarized in this joint proxy statement/prospectus solely to give stockholders access to information that was made available to Almost Family's board of directors and financial advisor and to LHC and its financial advisor in connection with their respective evaluations of the merger, and are not included in this joint proxy statement/prospectus in order to influence any Almost Family stockholder or LHC stockholder to make any investment or voting decision with respect to the merger." [DE 31-2 at 553]. Thus, the Court finds that Defendants provided the financials to comply with Item 1015.

to rely on staff comment letters and correspondence issued on an ad hoc, individual basis in response to proxy submissions.[4] Most of those comment letters simply refer the parties to Regulation G, without further expounding on the specific requirements of Regulation G or whether the financial disclosures qualified for subsection (d) and if they did not, why not. Thus, they are only marginally helpful.

While the C&DIs are not binding on the Court (*cf. Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon,* No.-11-cv-5459, 2013 WL 593766, at *4 (S.D.N.Y. Feb. 14, 2013) (finding C&DIs should not be afforded *Chevron* deference)), they help analyze the regulation. Other courts have used C&DIs for this purpose. *See, e.g.*, *Greenfield v. Cadian Capital Management, LP*, 213 F. Supp. 3d 509, 515 n.5 (S.D.N.Y. 2016); *SEC v. Longfin Corp.*, 316 F. Supp. 3d 743, 763 (S.D.N.Y. 2018). And the SEC refers parties to the C&DIs for additional guidance on what the regulation requires in its own comment letters. *See, e.g.*, *Harbin Electric, Inc.*, Correspondence 29 at Comment 44 (Aug. 12, 2011), *available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/0001144204-11-046281-index.htm.

In accordance with the requirements of Regulation G and consistent with the C&DI's guidance, the financial projections in the Proxy fall within subsection (d). The Proxy states that Defendants included the financial projections "solely to give stockholders access to information that was made available to Almost Family's board of directors and financial advisor and to LHC

---

[4] Plaintiffs have offered no authority to suggest that these comment letters are any more binding on the Court than the C&DI. In fact, in at least one of the comment letters cited by Plaintiffs, the SEC staff attorney refers the party to the Question 101.01 on the SEC's C&DI on Non-GAAP Financial Measures for further clarification of what is required by Regulation G. *See Harbin Electric, Inc.*, Correspondence 29 (Aug. 12, 2011) at Comment 44, *available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/0001144204-11-046281-index.htm. Defendants also submitted this Proxy to the SEC for approval and the SEC did not provided any comments directing Defendants to include a GAAP equivalent.

and its financial advisor in connection with their respective evaluations of the merger." [DE 31-2 at 553]. Thus, Defendants disclosed the financial projections under Item 1015 and their inclusion, without corresponding reconciliations, does not violate Regulation G or constitute an independent violation of Section 14(a).

> 2. *Statements that company could not provide GAAP equivalents is not a false and misleading statement.*

Plaintiffs allege that the following statement in the Proxy is materially misleading:

> Almost Family does not provide a reconciliation of the forward-looking non-GAAP financial measures of Adjusted EBITDA-NCI and Adjusted EBITDA-NCI+SBC to the comparable GAAP financial measures because it is unable to reasonably predict certain items contained in the GAAP measures, including non-recurring and infrequent items that are not indicative of Almost Family's ongoing operations.

[DE 31-2 at 555].

Plaintiffs argue that the statement is materially misleading because "per the Company's own definitions, in order to calculate either of the non-GAAP figures, one is required to start with their most comparable GAAP figure, GAAP net income." [DE 26 at 339, ¶65]. Thus, Plaintiffs contend that Defendants could calculate GAAP figures, and statements to the contrary are "misleading at best and false at worst." [*Id.*].

Defendants contend that the definition relied on by Plaintiffs states that while "the Non-GAAP Projections are generally 'defined as an amount equal to GAAP net income,' minus certain interest, expenses, taxes and depreciation . . . Almost Family could not reasonably predict and, thus, did not use GAAP net income to prepare the Non-GAAP Projections." [DE 31-1 at 423]. As a result, the Proxy's statement that Defendants could not prepare Non-GAAP projections is not contradictory to other statements in the Proxy and is accurate.

11

Plaintiffs' only basis for asserting that the Proxy is false or misleading is that Defendants were in fact able to provide GAAP equivalents, but claimed they could not. That said, Plaintiffs citation for this proposition, the definition of Non-GAAP Projections in the Proxy, when properly read, fails to support the notion that Defendants could provide GAAP equivalents. Plaintiffs claim that "in order to calculate . . . non-GAAP figures," one had to use the "most comparable GAAP figure, GAAP net income," because the definition of EBITA includes as a term "an amount equal to GAAP net income attributable to Almost Family for such period," [DE 26 at 338–39 (quoting DE 31-2 at 555)]. But the definition also states that "Adjusted EBITDA-NCI and Adjusted EBITDA-NCI+SBC are non-GAAP financial measures . . . Almost Family does not provide a reconciliation of the [these financial measures] to the comparable GAAP financial measures because it is unable to reasonably predict certain items contained in the GAAP measures." [DE 31-2 at 555]. Thus, the most comparable GAAP figure was unavailable to Defendants, and no reasonable shareholder could be misled by the statement.

ii. The Proxy contains no material omissions.

Plaintiffs also allege that the Proxy violates Section 14(a) because it omits material information which renders statements in the Proxy misleading. "Omission of information from a proxy statement is actionable if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *Seinfeld v. Gray*, 404 F.3d 645, 650 (2d Cir. 2005) (internal citation omitted); *see also Kugelman*, 972 F. Supp. 2d at 997. If the claim depends on the latter, then to satisfy the PLSRA's pleading standard, Plaintiffs must point to the specific statement alleged to be false or misleading and explain how the alleged omissions are material. *Kugelman*, 972 F.Supp.2d at 997.

Omitted facts are not material "simply because [they] may be relevant or of interest to a reasonable [shareholder]." *IBEW Local 98 Pension Fund v. Cent. Vermont Pub. Serv. Corp.*, No. 11-CV-222, 2012 WL 928402, at *9 (D. Vt. Mar. 19, 2012) (quotations and citations omitted). "A plaintiff's desire to know information that may be material . . . is not enough to state a claim under Section 14(a) under ordinary pleading requirements. . . . [S]ection 14(a) does not entitle him to 'more' information—it only entitles him to the information that Rule 14a–9 obliges it to supply." *Hysong v. Encore Energy Partners LP,* No. CIV.A. 11-781, 2011 WL 5509100, at *7–8 (D. Del. Nov. 10, 2011); *see also Ratner v. Forest City Realty Tr., Inc.,* No. 1:18CV2605, 2018 WL 6167311, at *2–3 (N.D. Ohio Nov. 26, 2018); *Kugelman*, 972 F.Supp.2d at 997. Plaintiffs have not cited a rule that specifically requires Defendants to include any of the allegedly omitted financial information in a Proxy. Thus, to be actionable, the omission must make another statement in the Proxy misleading. Plaintiffs have failed to show that the omitted financial details cause a specific statement in the Proxy to become materially misleading.

Plaintiffs allege that the Proxy's failure to provide GAAP equivalent financial projections made the non-GAAP financials misleading and the failure to disclose unlevered free cash flows ("UFCF") or the line items used to calculate the UFCF values renders Guggenheim's valuations misleading. [DE 35 at 769–701]. In response, Defendants argue that Plaintiffs failed to state a claim, because the FAC fails to point to any specific statement made misleading by the omission of that information, and regardless, neither the non-GAAP projections nor the UFCF figures are material. [DE 31-1 at 423].

> 1. *Omission of GAAP equivalents does not render any statement materially misleading.*

Plaintiffs claim that the failure to provide GAAP equivalents to the non-GAAP projections causes the non-GAAP projections to be materially misleading. The basis for Plaintiffs' argument

13

is that the inconsistent presentation of non-GAAP financial measures in prior SEC filings makes their inclusion here, without reconciliations, materially misleading. [DE 26 at 336–37, ¶¶ 56–57]. Plaintiffs' argument fails for two reasons. First, Plaintiffs have not shown how the omission of GAAP equivalent financials renders the non-GAAP financials misleading. Instead, the brunt of the argument appears to be that the inherent nature of the non-GAAP financials is so misleading, that their inclusion at all—without a GAAP equivalent—is materially misleading. There is no support in the law for such an assertion, and this is especially true given the limited purpose for which Defendants included these non-GAAP financials in the Proxy. While GAAP financials are preferred and perhaps would have helped shareholders evaluate the deal, that is not a basis for an omissions claim.

Second, Plaintiffs point only to the fact that the EBITA used in the financials included in the 2018 10-K was calculated differently than the EBITA used in the financial projections included in the Proxy to support their argument that the non-GAAP financials are misleading (again failing to explain how the omission of GAAP equivalents relate to the supposedly misleading statement). That said, Plaintiffs fail to allege how the difference in the EBITA calculations causes the financials in the Proxy to be misleading. That the respective financials were calculated differently was made clear by their labels. Courts have found that different calculation or treatment of financials in a Proxy is not misleading so long as the differences are disclosed and shareholders can determine from the Proxy the different method of calculation. *See In re 3Com Shareholders Litig.*, No. 5067-CC, 2009 WL 5173804, at *3 (Del. Ch. Dec. 18, 2009) (finding because "shareholders can plainly determine from reading the proxy that Goldman made a departure from the norm in conducting its discounted cash flow analysis [t]here [was] no disclosure violation . . . merely a disagreement with Goldman's methodology.")

## 2. *Omission of unlevered free cash flow projections does not render any statement materially misleading.*[5]

Plaintiffs allege that the omission of UFCF projections and the line items used to calculate the UFCF projections "renders Guggenheim's discounted cash flow analyses incomplete and misleading." [DE 26 at 342, ¶ 80]. Plaintiffs allege that since Guggenheim used the UFCF projections in its opinion and the Proxy fails to disclose those projections and the line items utilized to calculate them, shareholders were unable "to assess the merit of Guggenheim's analysis and therefore [determine] the weight (if any) to place on Guggenheim's conclusions."

---

[5] Plaintiffs appear to assert in the FAC that "the Company and Guggenheim used different versions of the non-GAAP financial metric" and the different versions causes the fairness opinion to be materially misleading. Based on the allegations of the FAC, however, each time the financials are used, they are defined, thus it is not apparent how the differences in the financials are misleading. In their Response, Plaintiffs' arguments related to the misleading nature of Guggenheim's analysis only includes discussion of the UFCF values. [*See* DE 35 at 767–69].

15

[*Id.* at 341, ¶¶ 76–79]. Thus, the omission of the UFCF projections and the line items used in the calculations is a material omission because it renders the fairness opinion misleading.[6]

In response, Defendants state that the Proxy includes a 14-page summary of Guggenheim's fairness opinion, including the assumptions made and the data reviewed and relied on by Guggenheim. Defendants argue that they did not have to include any additional information because it is not material and no omitted information made any portion of that summary misleading. [DE 31-1 at 424–30]. The Proxy also includes the entire fairness opinion. [31-2 at Annex D].

"The law does not require disclosure of every financial input used by a financial advisor so that the shareholders can replicate the advisor's analysis." *Kuebler v. Vectren Corp.*, No. 318CV00113RLYMPB, 2019 WL 4243193, at *6 (S.D. Ind. Sept. 6, 2019); *see also In re CheckFree Corp. Shareholders Litig.*, No. 3193-CC, 2007 WL 3262188, at *3 (Del. Ch. Nov. 1,

---

[6] Plaintiffs also filed supplemental authority [DE 40, 41]. The authority is not persuasive, as the facts are distinguishable from the case here. In *Karp v. First Connecticut Bancorp, Inc*., No. RDB-18-2496, 2019 WL 4643799 (D. Md. Sept. 24, 2019), the crux of Plaintiffs' argument is that the entire financial picture of the company was materially misleading because the Proxy only included some of the prepared cash flow projections (i.e., only projections for the fiscal years 2018 and 2019, less than half the amount of cash flows available (2018-2023) were provided for one company and no projections were provided for the other). The Court found that the incomplete or absent projections could constitute a material omission because "the summary information [included in the financial advisor analysis] provided was inadequate and misleading, and the reasons why were articulated sufficiently to survive this dismissal motion." *Id.* at *4. The opinion does not discuss in any detail how the summary information was "inadequate and misleading," but does specifically recognize that whether omitted financials makes a Proxy misleading "depends upon the circumstances of the particular case." *Id.* (quoting *Walker v. Action Indus., Inc*., 802 F.2d 703, 709 (4th Cir. 1986)). On the facts here, the financial analysis is not misleading. It does not provide only part of the cash flow projections. Instead, the fairness opinion summarizes the cash flow projections and provides an analysis based on them. While the actual UFCF figures were omitted, financial analysis based on them is provided in detail. Plaintiffs' second supplemental authority, *In re Envision Healthcare Corp*., No. 18-1068-RGA, 2019 WL 3494407 (D. Del. Aug. 1, 2019), adopted by *In re Envision Healthcare Corp*., No. 18-1068-RGA, 2019 U.S. Dist. LEXIS 159356 (D. Del. Sept. 19, 2019) is also distinguishable. As is clear from the district court's adoption of the magistrate's recommendation, the issue in that case is "not on the contents of [the financial projections]" but on including alternative projections and the statement that the alternative projection – which were intentionally manipulated – were "equally likely" to occur as other financials included in the Proxy. *Id.* at *4. Plaintiffs make no such allegations here.

2007) (finding financial advisors can consider undisclosed figures in arriving at their fairness opinion without making those undisclosed figures material omissions); *Kugelman*, 972 F.Supp.2d at 998–1000 (finding that plaintiff's "desire to know the bases by which the financial advisor selected certain methodologies and inputs used in the analyses of the merger" which were details allegedly omitted from the fairness opinion did not cause the fairness opinion to be misleading). "All that is required regarding a fairness opinion is an 'adequate and fair summary' of the work resulting in the opinion." *Louisiana Mun. Police Employees' Ret. Sys. v. Cont'l Res., Inc.*, 886 F. Supp. 2d 1255, 1264 (W.D. Okla. 2012).

Plaintiffs' primary allegation is that without the underlying financial information, shareholders could not reconstruct the values in Guggenheim's analysis. Thus, shareholders could not determine the "weight" to place on its conclusions. The Proxy need not disclose financial inputs sufficient to allow shareholders to reconstruct the analysis. Thus, Plaintiffs' omissions claim, based on the inability to reconstruct Guggenheim's analysis is facially insufficient.[7] *See Malon v. Franklin Fin. Corp.*, No. 3:14CV671-HEH, 2014 WL 6791611, at *6 (E.D. Va. Dec. 2, 2014) (finding omission of UFCF figures in summary of fairness opinion and proxy was not material omission). Further, the Proxy includes the entire fairness opinion, so any deficiency that may exist in the summary was cured. *Id.* (finding that "inclusion of the financial advisor's full fairness opinion would cure any deficiency that may exist" from the omission of the financial

---

[7] Plaintiffs rely on *In re Pure Res., Inc., Shareholders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002) to support the idea that the UFCF figures were necessary and material, and failure to disclose them constituted material omission. First, in that case the holding merely requires that "stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely," *In re Pure Res., Inc.*, 808 A.2d at 449, which the Court finds was done here. Second, *In re Pure Res., Inc.,* is distinguishable from this case because there the stockholders were the sole determiners of the deal because the Board, itself, recommended against the deal. Thus, "[t]he need for this information is heightened here, due to the Pure board's decision to leave it up to the stockholders whether to 'say no.'" *Id.* at 450.

figures). Thus, the omission of the UFCF projections or the line items used to calculate them from the summary of the opinion cannot constitute a material omission.

B. Scienter and Loss Causation

Because the Plaintiffs failed to plead a material omission or misleading statement actionable under Section 14(a), the Court need not address whether the Plaintiffs' Section 14(a) claims should also be dismissed for the failure to allege scienter[8] or loss causation.

C. Plaintiffs' Section 20(a) Claim

Section 20(a) of the Securities Exchange Act extends liability to "[e]very person who, directly or indirectly, controls any person liable under any provision" of the Exchange Act, jointly and severally with the person controlled. 15 U.S.C. § 78t(a). Because, as explained above, there is no underlying violation of Section 14(a), the Plaintiffs' Section 20(a) claims must be dismissed along with the Section 14(a) claims. *See Kugelman*, 972 F. Supp. 2d at 1000.

D. Plaintiffs' Breach of Fiduciary Duty Claims

Finally, Plaintiffs contend that the Individual Defendants breached their duty of loyalty and duty of candor because they "made materially incomplete and misleading statements in the Proxy and failed to correct them after notice." [DE 35 at 776]. Because the federal claims should be dismissed, the Court declines to exercise supplemental jurisdiction over the state law fiduciary duty claims. *See Kugelman*, 972 F. Supp. 2d at 1000; *Berlin Fin. Ltd. v. MPW Indus. Servs. Grp., Inc.*, No. 2:07-CV-442, 2008 WL 161309, at *10 (S.D. Ohio Jan. 15, 2008) ("this Court, having dismissed Plaintiffs' federal claims, presumptively should not address any state law claims")

---

[8] That said, the Court notes it has read and considered *Bluestone v. Sadove*, No. 3:18-cv-63, 2019 U.S. Dist. LEXIS 62207 (E.D. Tenn. Mar. 14, 2019) and other relevant cases, but it does not read *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422 (6th Cir. 1980) to require scienter outside accountants. The Court has found no other binding authority in the Sixth Circuit requiring a Section 14(a) claim to plead scienter.

(citing *Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir.2000)). Therefore, Plaintiffs' state law claims are dismissed without prejudice.[9]

E. <u>Defendants' Motion to Strike Plaintiffs' Expert Affidavit</u>

Defendants seek to strike the Affidavit of M. Travis Keath, CFA, CPA/ABV ("the Affidavit"), Exhibit A to Plaintiffs' FAC. The Affidavit is essentially an expert report opining on the materiality of the omitted financial information that is the basis of Plaintiffs' 14(a) omissions claim. Defendants argue that the Affidavit is not a written instrument under Federal Rule of Civil Procedure 10(c), and thus, it is improper to attach the Affidavit to the Complaint.

Rule 10(c) states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10. Thus, the Affidavit would be appropriately attached if it were a "written instrument." There is a circuit split on whether affidavits are categorically omitted from the definition of "written instrument," and the Sixth Circuit has not addressed the issue. That said, other district courts within the Circuit who have addressed this issue have not found affidavits like the one here to be "written instruments" under Rule 10. *See, e.g.*, *Benzon v. Morgan Stanley Distributors, Inc.*, No. 3:03-0159, 2004 WL 62747, at *3 (M.D. Tenn. Jan. 8, 2004), aff'd, 420 F.3d 598 (6th Cir. 2005) (finding that the court should not consider an expert witness's analysis and graphs attached to a complaint alleging Securities Act violations on motion to dismiss because "considering an expert affidavit on a motion to dismiss would force a district court to confront a myriad of complex evidentiary issues not generally

---

[9] Even if the Court was to exercise supplemental jurisdiction, Plaintiffs' state law claim would likely be dismissed. Plaintiffs' breach of fiduciary duty claims depend on the Individual Defendants' violation of the Securities Act. [DE 35 at 776 ("Plaintiff has successfully pled breaches of duty of loyalty and breach of duty of candor by Defendants by alleging that Defendants made materially incomplete and misleading statements in the Proxy and failed to correct them after notice.")]. Because the Proxy did not make materially incomplete and misleading statements in violation of the Securities Act, Plaintiffs have likely failed to allege a breach of the fiduciary duty.

capable of resolution at the pleading stage"); *Steverson v. Walmart*, No. 3:19-CV-00140, 2019 WL 3822179, at *2 (M.D. Tenn. Aug. 15, 2019) (collecting cases). Because the Affidavit does not fall within the definition of "written instrument" and is essentially evidentiary material, it is improper to consider it on a Motion to Dismiss and it is disregarded.

## IV. CONCLUSION

For the reasons stated above, and being otherwise sufficiently advised, the **COURT ORDERS AS FOLLOWS:**

(1) Defendants', Almost Family, LHC, Henry M. Altman, Jr., Steven B. Bing, Jonathan D. Goldberg, Clifford S. Holtz, Donald G. McClinton, W. Earl Reed, III, Tyree G. Wilburn, William B. Yarmuth, Motion to Dismiss [DE 31] is **GRANTED**.

(2) Defendants', Almost Family, LHC, Henry M. Altman, Jr., Steven B. Bing, Jonathan D. Goldberg, Clifford S. Holtz, Donald G. McClinton, W. Earl Reed, III, Tyree G. Wilburn, William B. Yarmuth, Motion to Strike [DE 32] is **GRANTED**.

(3) Plaintiffs' Motion for Substitution of Party for Deceased Defendant Steven B. Bing [DE 43] is **DENIED as MOOT**.

The Court will enter a separate Judgment consistent with this Memorandum Opinion & Order.

**IT IS SO ORDERED.**

Rebecca Grady Jennings, District Judge
United States District Court

February 10, 2020